# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | | |
|---|---|---|
| **BONNIE FORSYTH,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. CBD-09-2776 |
| **MICHAEL J. ASTRUE,** Commissioner, Social Security Administration | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Bonnie Forsyth, ("Plaintiff") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's claim for a period disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") and Commissioner's Motion for Summary Judgment ("Commissioner's Motion"). The Court has reviewed said motions and the applicable law. No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby DENIES Plaintiff's Motion and GRANTS Commissioner's Motion.

### I. Background

Plaintiff filed for DIB on November 17, 2006, alleging disability since June 1, 2004. (R. 8). Her claims were denied initially and upon reconsideration. (R. 14). On January 15, 2009, a video hearing was held before an Administrative Law Judge ("ALJ"), presiding from Richmond, Virginia. Plaintiff appeared in Hagerstown, Maryland and was represented by a non-attorney

representative. (R. 8). On March 11, 2009, the ALJ determined in a written decision that Plaintiff was not disabled within the meaning of the Act. (R. 18). Plaintiff subsequently requested review of the ALJ's decision by the Appeals Council, which was denied on September 11, 2009, making the ALJ's decision final and appealable. (R. 1-4).

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claim using the five-step sequential process set forth in 20 C.F.R. § 404.1520. At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity ("SGA") since June 1, 2004 - the alleged onset date. (R. 10). At the second step, the ALJ determined that Plaintiff has severe impairments, including migraine headaches, ischemic heart disease, pseudo-tumor cerebri, and antiphospholipid antibody syndrome with occluded bilateral carotid arteries. (R. 10). At the third step, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 11-12). At the fourth step, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b). (R. 12). However, Plaintiff should never climb a ladder, rope or scaffold, should avoid concentrated exposure to hazards due to medication side effects, and is further limited to simple, unskilled work, work not at a production pace, and that is low stress, defined as only occasional changes in the work setting. (R. 12). Further, the ALJ found that Plaintiff is capable of performing her past relevant work ("PRW") as a science and health resource teacher. (R. 17). As such, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Act from June 1, 2004 through the date of the decision [March 11, 2009]. (R. 18).

### III. <u>Standard of Review</u>

The role of this Court is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. §405(g); <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990); <u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Johnson v. Califano</u>, 434 F. Supp. 302, 307 (D. Md. 1977). Ordinarily if there is substantial evidence to support the decision of the Commissioner, then that decision must be upheld. <u>Smith v. Schweiker</u>, 795 F.2d 343, 345 (4th Cir. 1986). This Court cannot try the case <u>de novo</u> or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. <u>Id.</u>

The Court must also determine whether the Commissioner followed correct procedures. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." <u>Coffman</u>, 829 F.2d at 517. After review, the Court has the power to affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for rehearing. 42 U.S.C. § 405(g); <u>Virek v. Finch</u>, 438 F.2d 1157, 1158 (4th Cir. 1971).

Finally, it must be noted that hearings on applications for Social Security disability entitlement are not adversary proceedings. <u>Easley v. Finch</u>, 431 F.2d 1351 (4th Cir. 1970). Moreover, the Social Security Act is a remedial statute and it is to be broadly construed and liberally applied in favor of beneficiaries. <u>Dorsey v. Bowen</u>, 828 F.2d 246 (4th Cir. 1987). A

claimant is entitled to a full and fair hearing and failure to have such a hearing may constitute sufficient cause to remand the case. Sims v. Harris, 631 F.2d 26 (4th Cir. 1980).

### IV. Analysis

Plaintiff's three arguments are that: 1) the ALJ improperly rejected the treating physician's opinions of disability and failed to evaluate Plaintiff's work related limitations in accordance with Defendant's regulations; 2) the ALJ's RFC assessment was inconsistent with the regulations and the evidence; and 3) the determination that Plaintiff can perform her PRW omits consideration of her functional limitations set out in the record. Plaintiff experiences "good days" and "bad days." The issue is whether the severity or frequency of the "bad days" is sufficient to find Plaintiff disabled within the meaning of the Act. The ALJ concluded that Plaintiff was not disabled within the meaning of the Act. For the reasons set forth below, the decision of the ALJ is affirmed.

**A. Substantial Evidence Supports the ALJ's Decision to Afford Treating Physicians Dr. Jamal Ali & Dr. W. Stephen Hood's Opinions Little Weight.**

Plaintiff argues that Defendant's denial of DIB is based on an improper diminution of two treating physicians' opinions[1] stating her condition precludes her from working, the record of three years of treatment, and Plaintiff's own statements regarding her limitations due to pain and other symptoms. Plaintiff also criticizes the conclusion that she can perform her PRW. While Plaintiff argues that the ALJ's decision is not supported by substantial evidence, in part, for want of specific citations to the record, Plaintiff fails to cite to a specific report, page or date, to support any of her arguments. For example, Plaintiff states that "Dr. Ali's opinion regarding Plaintiff's inability to work due to her bilateral occluded carotid arteries is wholly consistent with Dr. Hood's opinion." (Pls.' Mot. 14). The records of Dr. Ali and Dr. Hood comprise at least

---

[1] Dr. Jamal Ali is Plaintiff's treating neurologist with Tristate Neurology Center, in Hagerstown Maryland. Dr. W. Stephen Hood is Plaintiff's treating cardiologist with Hagerstown Heart, in Hagerstown Maryland.

4

three separate exhibits, cover a span of more than three years, and include more than 80 pages of medical documents. Admittedly there are portions of those records that do offer some support to Plaintiff's claim, but within those same records lies evidence that erodes it. Faced with such a vague reference, there is simply no way for a reviewing court to determine whether it agrees or disagrees with such a proposition.

Plaintiff is correct that consistency is a factor for an ALJ to consider when determining how much weight to give a medical opinion - but it is not the only factor. The weight an ALJ determines to afford a medical opinion is based on the following non-exclusive considerations: (1) whether the source of the information examined the claimant; (2) the treatment relationship between the source and the claimant; (3) the supportability of the source's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the source is a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d)(3)-(6); see also, Johnson v. Barnhart, 434 F.3d 650, 654 n.5 (4th Cir. 2005) (citing Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (noting that the ALJ is not required to give a treating physician's opinion greater weight than other evidence in every case). While the ALJ did not apply the factors in a mechanical fashion, such rigid analysis is not required here. More importantly the ALJ did not fail in his duty to articulate the reasoning behind the weight he attributes to the opinions of Dr. Ali and Dr. Hood. Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986).

The weight of medical opinion aside, the regulations place reliance on the Commissioner, not a treating source opinion, for the determination of whether a claimant is disabled or not. This is because under 20 C.F.R. § 404.1527(e), whether an individual is disabled is expressly an

administrative finding that is dispositive of the case and therefore left to the Commissioner.[2] "Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5P, 1996 WL 374183 *2 (July 2, 1996). Thus despite Plaintiff's criticism of the ALJ's decision, a treating source opinion stating that Plaintiff is "disabled" will never be entitled to controlling weight or special significance in a Social Security decision. Id.

There are instances however where a treating source opinion is entitled to controlling weight. Under 20 C.F.R. § 404.1527(d)(2), the regulations state when "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."

Here, the ALJ does not overstep his duty under the regulations. For example, the ALJ does not quarrel with either doctors' opinions on the issue of the nature and severity of Plaintiff's impairment. Likewise the ALJ does not challenge the results of any MRI, MRA, EKG study or other laboratory results. However, the ALJ does take issue with the opinions that proclaim Plaintiff should be considered totally disabled, which as the regulations clearly state is the ALJ's alone to make. In addition, the ALJ also found the respective doctors' own treatment notes to be internally inconsistent with an opinion that Plaintiff is totally disabled.

### 1. Dr. Jamal Ali

Dr. Jamal Ali is Plaintiff's treating neurologist. On December 29, 2008, Dr. Ali completed a physical RFC form. (R. 360). On that form, Dr. Ali notes Plaintiff's diagnosis as

---
[2] Here, because the Commissioner adopted the ALJ's decision, the regulations also apply to the ALJ.

"bilateral Carotid artery occlusion with hypoplasia of [] arteries, frequent migraine headache, occipital neuralgia with headache, [and] antiphospholipid syndrome." (R. 360). Dr. Ali described her prognosis as "not good" and "asserts that she is at high risk of a significant cerebral vascular accident." (R. 360). Dr. Ali also records that her symptoms are "headache [and] chest pain" and that her headaches are not well controlled with medication. (R. 360). In addition, Dr. Ali claims that Plaintiff suffers from depression and anxiety, that her pain and other symptoms are severe enough to interfere with attention and concentration frequently, which would cause her to be absent more than three times per month. (R. 360). Finally, Dr. Ali states that Plaintiff is incapable of even "low stress" jobs and would require "frequent 10 minute or more breaks in an eight hour work day." (R. 360-61).

The Court finds the ALJ's decision to afford this RFC assessment by Dr. Ali little weight as reasonable. Regarding Dr. Hood, Dr. Howell and Dr. Hamdan[3], the ALJ states:

> The undersigned gives little weight to the opinion of Dr. Jamal Ali in Exhibit 20F [the RFC form]. Dr. Ali listed the claimant's symptoms as headache, which he stated were not well controlled with medication, and chest pain. This is inconsistent with the medical records of Dr. Hood, Dr. Howell, Dr. Handman, as well as his own medical records. At every appointment since her catheterization in October 2005, Dr. Hood noted that the claimant had not experienced any chest pain or chest discomfort, including any pain upon physical exertion or physical activity (Exhibit 11). Dr. Howell and Dr. Handman both note significant periods that the claimant has not had any headaches (Exhibit 14F and 15F). Dr. Ali, himself, has noted that the claimant's headaches have resolved, sometimes within minutes, with certain mediations (Exhibits 12F and 19F).

(R. 16).

In December of 2007, Dr. Mary Howell, a rheumatologist, reports that after Dr. Ali switched Plaintiff's medication, her headaches had "disappeared for the past two weeks." (R. 339). Later in July of 2008, Dr. Howell notes that Plaintiff had experienced headaches but that

---

[3] In the ALJ's decision, this doctor's name is spelled "Handman" but the actual record reflects that his name is spelled "Hamdan."

7

Plaintiff believed they were caused by stress. (R. 337). The Court finds that Dr. Ali's RFC assessment is inconsistent with Dr. Howell's record.

With regard to the notes of Dr. Hind Hamdan of Antietum Oncology and Hematology there is great variance. In August of 2007, Dr. Hamdan does not mention headaches at all. (R. 320). Less than a month later, in September of 2007, Dr. Hamdan states that Plaintiff has severe chronic headaches. (R. 319). In November of 2008, Dr. Hamdan reports that Plaintiff has not had any recent headaches. (R. 315). In addition to observations involving headaches, in June of 2008, Dr. Hamdan notes that Plaintiff denies chest pain or discomfort. (R. 316). While there is some acknowledgment of migraine headaches, the Court still finds the ALJ's observation in comparing Dr. Ali and Dr. Hamdan's views as reasonable.

There is evidence to suggest that Plaintiff's migraines are not as Dr. Ali describes in the RFC form. Plaintiff's alleged onset date is June of 2004 and the underlying basis for the initial claim is migraine headaches. (R. 23, 34). On June 15, 2006, Plaintiff presented for emergency room treatment at the request of Dr. Hood because she complained of having a severe headache for three days. (R. 194). In the emergency room note it states: "[t]he patient says she has a long history of headaches but she has not had one in over 2-3 years and that is really what worried her." This suggests that near the time of Plaintiff's application, she did not suffer from a recent history of migraine headaches. This lack of history alone would justify the ALJ's denial of disability under the Act.

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." 42 U.S.C. §416(i)(1). The term "period of disability" is defined as a continuous period of not less than 6

full calendar months. Having such significant lapses between symptoms is potentially fatal. See Herr v. Sullivan, 912 F.2d 178, 182 (7th Cir. 1990) (noting that the ALJ determined "that there was no period of total disability lasting the requisite twelve months or longer").

Turning to the issue of chest pain, the ALJ is incorrect that "at every appointment since her catheterization in October 2005" Plaintiff did not report any chest pain. In a note from December 2005, Dr. Hood states that Plaintiff "continues with some anterior chest discomfort," which bothers her late in the evening or after lifting her 25 pound nephew for the better part of day when she babysits him. (R. 244, 246). However, it is true that there are instances in the record where Dr. Hood notes that Plaintiff is not experiencing chest pain. These references serve to contradict Dr. Ali's RFC assessment. (R. 234, 241). For example, in May of 2006, Dr. Hood states "[f]rom a purely cardiac standpoint she has been doing well since her visit [here] in December 2005. During that period of time she has not been bothered by chest pain or chest discomfort. She is having no excessive or abnormal dyspnea [shortness of breath][4] and no symptoms of CHF [congestive heart failure][5]." (R. 239). Thus, save for that one entry in December of 2005, the ALJ's finding is ostensibly true regarding Dr. Hood's notes on the issue of chest pain. Therefore, the ALJ's decision to afford Dr. Ali's RFC little weight is supported by substantial evidence.

### 2. Dr. W. Stephen Hood

The observations the ALJ makes regarding Dr. Hood's claim that Plaintiff is disabled is also afforded little weight. The ALJ states:

> The undersigned gives little weight to the opinion of Dr. W. Stephen Hood in Exhibit 11F at page 1. Dr. Hood suggests that the claimant should be considered permanently and totally disabled. It is first noted that whether or not a claimant is

---

[4] Stedman's Medical Dictionary 556 (Lippincott Williams & Wilkins, 27th ed. 2000).
[5] Neil M. Davis, Medical Abbreviations, 35 (6th ed. 1993).

9

> disabled is an opinion reserved to the Commissioner. Dr. Hood did not describe any medical or clinical findings that supported his assessment that the claimant was permanently and totally disabled. Additionally, this opinion is inconsistent with his own treatment notes. At every appointment since her catheterization in October 2005, Dr. Hood noted that the claimant was doing well from a cardiac standpoint, and that she had not experienced any chest pain or chest discomfort, including any pain upon physical exertion or physical activity (Exhibit 11F). Finally this form contradicts the claimant's own statements and testimony regarding [her] daily activities.

(R. 16).

To the extent Plaintiff experienced chest pain, it was not attributed to any cardiac condition. For example, Dr. Hood notes in December 21, 2005, that Plaintiff's chest discomfort is musculoskeletal in nature. (R. 244). Further, he opines that this pain differs from her angina "and it tends to bother her late in the evening or the following day after having babysat her nephew who is 6 months old and weighs 25 pounds. She is carrying this child around the better part of the day." (R. 244).

It is not that the ALJ disagrees with Dr. Hood's cardiovascular disease diagnosis. But simply because Plaintiff has a condition, does not automatically mean she is disabled under the Act. At step three, the ALJ found that she did not meet one of the Listings for a cardiac condition. At this step, and step four, Plaintiff still has the burden of proof. Unfortunately, Dr. Hood does not bother to explain the consequence related to having complete occlusion of both arteries, to explain why Plaintiff should necessarily be considered totally disabled or to explain how to bridge the gap between the diagnosis and the conclusion that she should be deemed totally disabled based on the diagnosis alone. (R. 239). There is an obvious problem when Dr. Hood opines that Plaintiff is disabled, but within that same note states that her EKG is normal, that Plaintiff is not experiencing excessive or abnormal dyspnea, has no symptoms of CHF,

having no palpitations (forcible or irregular pulsation of the heart)[6], syncope (loss of consciousness and postural tone caused by diminished cerebral blood flow)[7] or near syncope. (R. 239). It seems odd to note that Plaintiff is "doing fine" from a cardiac standpoint, but ultimately conclude that she is completely disabled on account of her cardiac problems.

The conclusion the ALJ reached is reasonable. The Court finds that the ALJ's decision is supported by substantial evidence. The Court does not share Plaintiff's view that the ALJ failed to provide adequate justification for his findings with regards to Dr. Ali and Dr. Hood. Not only does the ALJ specify how much weight he is giving each opinion, the Court also finds that the citation to the record was more than adequate.

**B.      The ALJ's RFC Complied with the Regulations and the Evidence in the Record.**

Plaintiff argues that the ALJ's RFC assessment is inconsistent with the regulations and the evidence in the record. (Pls. Mot. 16). The Court does not agree with Plaintiff's characterization of the ALJ's RFC assessment.

First, the ALJ follows the prescribed regulatory format. Second, addressing each impairment in turn, the ALJ explicitly discusses the evidence in the record that he used to support the conclusions reached. Specifically, the ALJ found that Plaintiff has the RFC to perform light work except that she may never climb ladders, ropes or scaffolds, and may only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. (R. 12).

The RFC assessment is used at step four and five of the sequential process. SSR 96-8P, 1996 WL 374184 * 2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity

---

[6] Stedman's Medical Dictionary 1301 (Lippincott Williams & Wilkins, 27th ed. 2000).
[7] Stedman's Medical Dictionary 1745 (Lippincott Williams & Wilkins, 27th ed. 2000).

11

to do work-related physical and mental activities." SSR 96-8P, 1996 WL 374184 * 2 (July 2, 1996). The regulations governing RFC assessments state: "Your [RFC] is the most you can still do despite your limitations. We will assess your [RFC] based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545 (a)(1). Therefore, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g, daily activities, observations)." SSR 96-8P, 1996 WL 374184 * 6 (July 2, 1996).

When that narrative includes the issue of pain, in this Circuit, it is well-established that an ALJ must follow a two-step process for assessing complaints of pain as set forth in 20 C.F.R. § 404.1529(a). Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The first step requires the adjudicator to determine whether the evidence indicating a medical impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529 (b). The second step requires the adjudicator to evaluate the intensity and persistence of Plaintiff's symptoms to determine how Plaintiff's symptoms limit her capacity to work. 20 C.F.R. § 404.1529(c)(1). This second step necessarily requires the ALJ to make a determination "about the credibility of an individual's statements about pain." SSR 96-7P, 1996 WL 374186 (July 2, 1996).

In addition to objective medical evidence, the regulations also provide the following factors for consideration when an ALJ is determining Plaintiff's credibility regarding pain. They are: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications Plaintiff takes or has taken to alleviate her pain or other symptoms; (5) treatment, other than medication, Plaintiff received or has

received for relief of her pain or other symptoms; (6) any measures Plaintiff uses or has used to relieve her pain or other symptoms (e.g., lying flat on her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529 (c)(3)(i)-(vii). See also, SSR 96-7P, 1996 WL 374186 *3 (July 2, 1996).

After determining that the evidence supports Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she alleges, the ALJ found that the "conservative nature of the claimant's medical care, and her activities of daily living, including a two week trip the claimant took to Europe in 2008, all serve to diminish her credibility regarding the frequency and severity of [her] impairment and the extent of her functional limitations." (R. 16). Taking these issues in turn, the ALJ notes that Plaintiff's doctors "seem content to monitor [Plaintiff's] bilateral carotid artery occlusions, as none of them have prescribed any treatment for her bilateral carotid artery occlusions." (R. 15). The more fair explanation is that bilateral carotid artery surgery results are often worse than the condition itself so that Plaintiff's doctors have considered surgery not be an option. (R. 177). Thus, it is a bit of an over statement to interpret their "conservative" approach as suggesting that this condition is not an issue at all. Nonetheless, it is not unreasonable for the ALJ to conclude that this condition and the prescribed treatment do not warrant a finding that she is "disabled."

In terms of daily activity, the Fourth Circuit has said that "[t]he only fair way to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (citation omitted). It is important to note that the ALJ's reference to Plaintiff's daily activities come from Plaintiff's written statements and testimony contained within the record. The ALJ states:

13

> [Plaintiff] testified that she has concentration and attention problems. If the claimant went back to work today, she testified that she would likely miss four or five days per month. She testified that she can only stand for fifteen minutes at one time. In her written statements and testimony, the claimant indicated that she[:] cooks, does laundry, shops and drives. She also indicated that she sometimes works with her mother in a local liquor store. Her written statements for the record further indicate that the claimant walks, swims and attends church regularly (Exhibit 3)
>
> . . .
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning her intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment[referring to the ALJ's RFC].

(R. 13).

While Plaintiff testified that she has decreased or eliminated her participation in certain activities, Plaintiff still presents as an individual engaging in a wide range of activities. Thus, it is not Plaintiff's impairments that the ALJ discredits but the extent to which she purports the "intensity, persistence and limiting effects of these symptoms" as they relate to her impairments. (R. 13).

In terms of the 2008 trip to Europe, Plaintiff argues that it was originally scheduled for 2007, which she had to cancel. (R. 29). Plaintiff claims she was forced to miss it due to her "medical condition." (Pls. Mot. 17, R. 28-29). While technically true, the "medical condition" was not related to the migraine headache for which Plaintiff sought disability benefits. According to Plaintiff, "they removed about a quart of blood from my leg, and I had large hematomas in my leg." (R. 29). This was believed to be caused by a medication she was taking at the time. (R. 29). Plaintiff's election and participation in such a pleasure trip supports the ALJ's view that Plaintiff's pain was not substantial.

14

## C. The ALJ's Determination that Plaintiff Can Perform Her PRW is Consistent with the Evidence in the Record.

Plaintiff was born on October 28, 1948. (R. 24). At the time of the hearing, Plaintiff was 60 years old. (R. 24). Plaintiff has a master's degree. (R. 33). From 1976 through June 2004, Plaintiff worked for the Washington County Board of Education as a science and health resource teacher. (Pls. Mot. 2).

Plaintiff's argument with regard to the ALJ's determination that she can perform her PRW reads as follows (in its entirety): "The vocational expert testified that there are no jobs that could be performed by a person with the limitations [Plaintiff] describes, and the evidence entirely supports her statements. In light of these facts, the Commissioner has failed to meet his burden of showing that she can perform alternate work." (Pls. Mot. 19-20).

The purpose of a vocational expert ("VE") is to assist the ALJ in determining if there is work in the national economy that this particular claimant is capable of performing. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). But, "[t]he ALJ is under no duty to present the VE with hypothetical questions that include Plaintiff's claimed impairment if the ALJ has found those impairments to be not severe or credible." McPherson v. Astrue, 605 F. Supp. 2d 744, 761 (S.D.W.Va. 2009). Thus the questions posed to the VE are necessarily dependent on the ALJ's determination of Plaintiff's credibility. Id.

Here, the ALJ articulates that he found Plaintiff's credibility diminished by her testimony regarding her daily activities. (R. 13). In particular, the ALJ determined that based on the RFC assessment, Plaintiff was not precluded from performing light tasks with certain limitations. (R. 17). Thus, the ALJ posed the following hypothetical to the VE:

> [L]et's assume a hypothetical individual with the same age, education, and work experience as [Plaintiff]. . . .
>
> . . .

15

let's assume that this hypothetical individual is able to lift 20 pounds occasionally, 10 pounds frequently; would be able to stand or walk for about six hours, with normal breaks, in an eight-hour day; would be able to sit for about six hours in an eight-hour day, with normal breaks; and would have limited pushing and pulling capabilities within those limits. And in terms of postural limitations, this individual would never be able to be on ladders, ropes, or scaffolding, but could occasionally engage in all other postural maneuvers, as are looked at by the Social Security Administration. Would this individual be able to do any of the prior work that's been done by [Plaintiff], either as [] described by her or by the [Dictionary of Occupational Titles]?

(R. 38-39).

This hypothetical is entirely consistent with the ALJ's RFC assessment as explained in his decision. (R. 12). In response to this hypothetical the VE testified that this individual could perform Plaintiff's PRW as a health resource teacher or a secondary school teacher. (R. 39). Because Plaintiff misconstrues the evidence, her argument is without merit. Therefore, the ALJ's determination that Plaintiff can perform her PRW is supported by substantial evidence.

## V. Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence. Further, Plaintiff has not satisfied her burden of proof. Based on the foregoing, the Court DENIES Plaintiff's Motion and GRANTS Commissioner's Motion.

February 18, 2011 _____/s/_____
                                                                                                  Charles B. Day
                                                                                                  United States Magistrate Judge

CBD/sm